## Marvin Simonsen, appellee, v. Hendricks Sodding & Landscaping Inc., appellant.

558 N.W.2d 825

Filed January 7, 1997.    No. A-95-566.

Alan L. Plessman, of Plessman Law Offices, for appellant.

Thom K. Cope, of Bailey, Polsky, Cope & Nelson, for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and MUES, Judges.

HANNON, Judge.

In this action, appellee, Marvin Simonsen, an employee at will, recovered a jury verdict of $81,240 against appellant, Hendricks Sodding & Landscaping Inc., for wrongfully discharging him because he refused his supervisor's order to drive a truck which had defective brakes. Hendricks appeals on the grounds that the evidence is insufficient to support the verdict and that the court committed plain error in instructing the jury. We conclude that driving a truck with defective brakes on the roads is against the laws of this state and that it is against public policy for an employer to discharge an at-will employee when that discharge is motivated by the employee's refusal to violate the criminal laws or public policy of the state. We also find no plain error in the court's instructions to the jury, and we therefore affirm.

## FACTUAL BACKGROUND

In substance, Simonsen alleges that he was employed by Hendricks as a mechanic; that on May 22, 1991, he was driving Hendricks' truck in the course of his employment when he ran a stoplight because its brakes were defective; that a U.S. Department of Transportation (DOT) inspector ordered that the truck not be moved until the truck was repaired; that on May 24 Simonsen was attempting to repair the brakes when his supervisor ordered him to put the wheels on and take the truck on the road; that Simonsen was aware that the appropriate repairs had not been made; and that "[Simonsen] had reasonable cause to believe that placing the truck back in service without further repair would result in a violation of state or federal law and would endanger the safety of the public." Simonsen alleges he was fired for refusing to drive the truck with defective brakes. In its answer, Hendricks admits the employment and the events of May 22, but specifically denies Simonsen was fired for refusing to drive the truck.

Since the jury verdict was in favor of Simonsen, we will summarize the evidence in a light most favorable to Simonsen and mention Hendricks' evidence to the contrary only as necessary

to frame the issues. Simonsen was hired by Norman LeGrande, the owner of Hendricks, to work as a diesel mechanic repairing the company's trucks and other heavy equipment for compensation of $9 per hour plus fringe benefits. Their agreement was not reduced to writing, but the evidence established that Simonsen was an at-will employee. Simonsen testified that several trucks in Hendricks' fleet were old and in constant need of repair and that repairs were made to old parts which should have been replaced. On May 22, Simonsen, while driving one of Hendricks' trucks, was unable to stop the truck at a red light and ran through the intersection. He was cited by both the Lincoln Police Department and DOT for having defective brakes. Another driver of one of Hendricks' other trucks was also ticketed at the same time by DOT. The DOT officer would not permit either truck to be driven until the brakes were at least temporarily fixed so the brakes could stop the truck. The next day, May 23, Simonsen and the other driver spent 7 hours at the site repairing the trucks. With DOT's permission, the other driver drove both trucks back to the shop, because Simonsen refused to drive them.

On May 24, Simonsen worked on the brakes of one of these trucks. Tim LeGrande, one of the owner's sons and Simonsen's supervisor at that time, asked Simonsen if the truck was available for service. Simonsen told him that the truck would not be available that day. Simonsen continued to work on the truck's brakes for another hour by taking wheels off and dismantling other parts of the truck. He was questioned by another of the owner's sons, Dan LeGrande, as to the availability of the truck. Simonsen's testimony and Dan LeGrande's testimony differ at this point.

Simonsen testified that he told Dan LeGrande that the truck would not be available because of the many problems with the braking system. Dan LeGrande became agitated and told Simonsen either to get the truck together and drive it to the job site or he was fired. Simonsen refused to drive the truck and turned and walked away from Dan LeGrande. He wrote on his work ticket for the day that "Danny Boy fired me, I guess." In Simonsen's opinion, the brakes in their condition at the time were defective. Simonsen testified that he spoke with another

supervisor, who told him to go home and to work it out with Norman LeGrande, the owner, when Norman LeGrande returned from vacation. Simonsen packed his tools and left. After contacting Norman LeGrande several days later, Simonsen determined that Dan LeGrande had fired him.

Dan LeGrande testified and denied Simonsen's version of these events. While Hendricks argues that the evidence is insufficient to support the verdict, it bases that argument on the fact that Simonsen was an employee at will, not that the evidence would not support a finding that Simonsen was fired for refusing to drive the truck. Hendricks offered no evidence to dispute Simonsen's testimony that the brakes were defective. The jury verdict makes it unnecessary to further summarize the evidence on these issues.

Simonsen testified that when employed by Hendricks he was paid an average of $560 per week; that he was unable to find comparable employment as a mechanic or maintenance person after he was fired; that as a result he became self-employed as a mechanic, also putting basements in houses and performing "all kinds of odd jobs"; and that his total taxable income since leaving Hendricks had been about $2,500. Since Hendricks does not argue regarding the sufficiency of the evidence to support the amount of the verdict, we need not elaborate further on the evidence on damages.

Hendricks filed a motion for new trial and appealed after it was overruled.

## ASSIGNMENTS OF ERROR

Hendricks alleges seven errors, which summarized and restated are that the trial court committed plain error (1) by not directing a verdict in its favor, (2) by instructing the jury that Simonsen claimed he refused to drive a defective truck when he alleged in his operative petition that he refused to drive a truck because he *believed* the truck to be defective, and (3) by instructing the jury that it is the law of the state, as declared by the Legislature, that defective vehicles shall not be driven on the roads of Nebraska.

Hendricks also alleges that the court erred in instructing the jury on damages, in overruling its motion for a continuance,

and in overruling its motion for new trial. Hendricks does not argue any error concerning the damages instruction. To be considered by an appellate court, claimed prejudicial error must not only be assigned, it must also be discussed in the brief of the asserting party. An appellate court will not consider assignments of error which are not discussed in the brief. *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995). Therefore, we will not address this assignment.

Hendricks also alleges the trial court erred in not granting its motion to continue the trial. " 'An application for continuance must be in writing and supported by an affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of proceedings.' " *Stewart v. Amigo's Restaurant*, 240 Neb. 53, 60, 480 N.W.2d 211, 216 (1992) (quoting *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989)). Here, Hendricks orally moved for a continuance without a supporting affidavit. Therefore, the trial court properly denied the motion for a continuance. The motion for new trial did not raise any issue that is argued separately from those listed above, and therefore this alleged error is not considered as a separate assignment.

## STANDARD OF REVIEW

The only questions presented by the appeal are legal questions. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Lee Sapp Leasing v. Catholic Archbishop of Omaha*, 248 Neb. 829, 540 N.W.2d 101 (1995); *Dolan v. Svitak*, 247 Neb. 410, 527 N.W.2d 621 (1995).

## DISCUSSION

*Failure to Direct Verdict.*

Although Hendricks did not move for a directed verdict at any time during the trial, Hendricks alleges on appeal that the trial court erred in not directing a verdict in its favor. In the absence of plain error, where an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as the district court cannot commit error in resolving an issue never presented and submitted for disposition. See *In re Estate of Trew*,

244 Neb. 490, 507 N.W.2d 478 (1993). Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *In re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995); *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994).

Hendricks contends that Simonsen was an at-will employee, who under Nebraska law could be terminated at any time with or without reasons unless his employer was constitutionally, statutorily, or contractually prohibited from doing so. Hendricks alleges that the evidence was insufficient to show that Simonsen had any rights other than those of an at-will employee and thus, relying on *Borland v. Gillespie*, 206 Neb. 191, 292 N.W.2d 26 (1980), that the trial court erred in giving the case to the jury. The record shows that Simonsen is an at-will employee.

Simonsen relies upon the holdings in *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988), and *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987). In *Ambroz*, the trial court held a security guard who sued for wrongful discharge did not state a cause of action when he alleged that he was fired for refusing to take a polygraph examination, when the statute provided no employer could require an employee in the security guard's position to submit to such an examination as a condition of employment. The Supreme Court reversed the judgment and in so doing recognized the rule that " 'when employment is not for a definite term and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses.' " (Emphasis omitted.) *Id.* at 902, 416 N.W.2d at 513 (quoting *Jeffers v. Bishop Clarkson Memorial Hosp.*, 222 Neb. 829, 387 N.W.2d 692 (1986)). The *Ambroz* court observed that other jurisdictions have recognized a public policy exception, that is, that an at-will employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy. The *Ambroz* court held that the statute's provision that an employer could not require an employee to submit to a poly-

graph examination was a pronouncement of public policy on the issue of wrongful discharge.

In *Schriner*, the public policy exception was recognized, but the court determined that the evidence did not support its application in that case. The employee had been fired after he reported his employer for the suspected criminal activity of setting back odometers. The *Schriner* court listed several cases from other jurisdictions where discharged employees were allowed to recover for wrongful discharge after refusing to set back odometers or to violate similar laws, and it distinguished the situation in *Schriner* from "those cases in which an action for wrongful discharge was based on an employee's refusal to participate in criminal conduct." *Id.* at 89, 421 N.W.2d at 758. In *Schriner*, the employee was held not to have had reasonable cause to believe his employer had violated the law in the manner that the employee had reported to public officials. There was a dissent on the grounds that Schriner did have reasonable grounds to report his employer. We therefore conclude that the law in Nebraska is that an at-will employee has a cause of action for wrongful discharge against his or her former employer if the employee was discharged in violation of a contractual right or a statutory restriction or when the motivation for the discharge contravenes public policy.

We also conclude that employees who are discharged because they refused to commit an act that violates the criminal laws of the state are discharged for a motive that contravenes public policy, and they have a cause of action notwithstanding that they are at-will employees. We come to this conclusion because of the discussion in *Schriner* and because the Legislature has specifically so provided in the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 through 48-1125 (Reissue 1993). Section 48-1114 provides in part: "It shall be an unlawful employment practice for an employer to discriminate against any of his or her employees . . . because [the employee] (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state." We realize that Simonsen did not state a cause of action under the Nebraska Fair Employment Practice Act because the record does not establish Hendricks was an "employer" as that

term is defined in § 48-1102(2), that is, there is no evidence that Hendricks had at least 15 employees. That statute does, however, support the rather obvious conclusion that it is against the public policy of this state for employers to require employees to violate the law in order to remain employed.

Would the operation of the truck with defective brakes violate the law of Nebraska? "Yes" seems to be the obvious answer. Neb. Rev. Stat. § 75-363 (Reissue 1990) adopts portions of the federal motor carrier safety regulations. The relevant portion of those regulations is found at 49 C.F.R. § 393.40(a) (1995), which provides that a truck must have brakes adequate to control the movement of and to stop and hold the vehicle. A violation of the provisions adopted under § 75-363 is a misdemeanor. Neb. Rev. Stat. § 75-367 (Reissue 1990). Thus, we conclude that the Legislature has made driving with defective brakes a misdemeanor and in so doing has declared that to do so violates public policy. Therefore, we conclude that the trial court did not err in giving this case to the jury and that the evidence supports the verdict.

*Jury Instructions.*

Hendricks contends that despite its failure to object to the instructions at issue, the court committed plain error in instructing the jury. While ordinarily the failure to object to jury instructions after they have been submitted for review will preclude raising an objection thereafter, a trial judge is nonetheless under a duty to correctly instruct on the law without any request to do so, and an appellate court may take cognizance of plain error and thus set aside a verdict because of a plainly erroneous instruction to which no previous objection was made. *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495 (1994). Thus, we first consider whether the alleged plain error was in fact error.

Hendricks alleges that portions of jury instructions Nos. 2 and 5 are incorrect statements of the law and are not supported by the evidence or the pleadings. Instruction No. 5 states in part, "It is the law of this state, as declared by the Legislature, that defective vehicles are not to be driven on the roads of Nebraska." As discussed above, § 75-363 prohibits the use of a

truck without proper brakes. Thus, this is a proper statement of the law and therefore could not be plain error.

Instruction No. 2 provides in part that "[t]he plaintiff, Marvin Simonsen, claims that he was terminated from his employment because he refused to drive a defective truck" and that it is Simonsen's burden to prove that "the plaintiff's employment was terminated by the defendant because he refused to drive a defective truck."

Hendricks correctly states that Simonsen alleges in his petition that he was terminated because he refused to drive Hendricks' truck, which Simonsen "believed" to be in violation of federal and state law. Hendricks contends that the petition is based upon Simonsen's belief that the truck was defective and not upon whether or not the truck was actually in violation of the law. The court instructed the jury that Simonsen claimed the brakes were defective. Hendricks argues that the instructions changed the issues from those that were pled and that as given the instructions are not supported by sufficient evidence. We do not agree.

Simonsen's "belief" is not one of the elements of his cause of action against Hendricks. The allegation of his belief merely explains why he refused to drive the truck. Such an allegation is immaterial, but the petition otherwise sets forth sufficient facts to state a cause of action. The court properly instructed the jury on the elements of that cause of action. There is no error in the jury's instructions, and therefore we may not consider any claim of plain error.

AFFIRMED.