IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

PRINCE V. WALMART ASSOCIATES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DEBORAH E. PRINCE, APPELLANT,

V.

WALMART ASSOCIATES, INC., AND ITS WORKERS' COMPENSATION INSURER, AIU INSURANCE
COMPANY, APPELLEES.

Filed September 26, 2023.    No. A-23-044.

Appeal from the Nebraska Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

Brynne Holsten Puhl, of Atwood, Holsten, Brown, Deaver, Spier & Israel Law Firm, P.C., L.L.O., for appellant.

Jenna M. Christensen, of Caswell, Panko & Westerhold, L.L.C., for appellees.

BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Deborah E. Prince appeals from an order of the Workers' Compensation Court dismissing her claim for workers' compensation benefits. On appeal, Prince argues that the compensation court erred in finding that she failed to timely notify her employer, Walmart Associates, Inc. (Walmart), of her injury. For the reasons set forth herein, we affirm the decision of the compensation court to dismiss Prince's claim because she did not provide notice of her injuries to Walmart "as soon as practicable" as is required by Neb. Rev. Stat. § 48-133 (Reissue 2021).

### BACKGROUND

In January 2021, Prince was employed at one of Walmart's stores in Omaha, Nebraska, working in the bakery department. At some point around January 20, Prince was washing the

- 1 -

bakery floor at the end of her workday when she slipped on the wet floor. She did not fall to the ground, but her left leg "twisted" and she felt immediate pain. Prince was alone at the time of this incident.

Prince did not immediately report this incident to her supervisors. Instead, she attempted to treat her injury with ointments and over-the-counter pain relievers. However, according to Prince, her injury worsened. Prince indicated that her pain level was "way over a 10" and she cried every day at work. In addition, she limped and had to hold on to shelves when she walked down the store's aisles. During this time, Prince continued to work full time, completing her regular duties.

On March 29, 2021, an incident report was filed with Walmart regarding Prince's injury to her left leg. The filing of the report was precipitated by Yaovi Grunitzky (Joelle), an operations manager at the Walmart store, observing Prince limping around the store. When he asked her what was wrong and what had happened, Prince disclosed that she had been hurt while washing the floor in the bakery in January. When he asked why she had not followed policy and reported the accident earlier, she told him that she did not know why she had not made an earlier report.

Shortly after the filing of the incident report, Walmart referred Prince to Dr. Arthur West for treatment. West initially diagnosed Prince as suffering from a strain of the hamstring muscle in her left leg. He prescribed a muscle relaxer and referred her to a physical therapist. However, when this treatment plan proved unsuccessful, West conducted an MRI of Prince's left leg and learned she had an injury to her left hip. Ultimately, in May 2021, Prince was informed that her injury required a total joint replacement of her left hip.

Walmart also permitted Prince to change departments at the store to accommodate her physical restrictions. Instead of working in the bakery, on March 31, 2021, Prince began working as a door greeter where she could remain seated for most of the day.

Prince underwent hip replacement surgery in September 2021. After the surgery, she experienced some improvement in the pain in her left leg. Prince did not work from September 23 through November 19 as a result of the surgery. Walmart voluntarily paid her lost wages during this time period. Walmart also voluntarily paid for $37,097.30 of Prince's medical expenses, which included the majority of Prince's left hip treatment, including the left hip surgery. When Prince returned to work at Walmart in November, she answered telephone calls and gradually transitioned to working in the bakery department again. Prince voluntarily reduced her working hours to 8 hours per day, for 3 days per week. She has had to seek help whenever she needs to bend down or lift anything heavy.

In February 2022, Prince filed a petition for workers' compensation benefits. Prince indicated in her petition that the matters in dispute included:

> the compensability of past, present, and future medical and mileage expenses, reimbursements, the compensability of future medical care, temporary disability, and [whether Prince] has reached maximum medical improvement at the time of trial, further issues will include the nature and extent of [Prince's] permanent impairment and disability, entitlement to vocational rehabilitation, and waiting time, interest, and attorney fees concerning said benefits.

Walmart filed a timely answer to Prince's petition. In its answer, Walmart denied that Prince suffered a disability which arose out of or in the course of her employment with Walmart. Walmart also affirmatively alleged that no notice of injury was given by Prince to Walmart as soon as practicable after the happening thereof as is required by § 48-133.

In May 2022, a few months after filing her petition, Prince returned to her orthopedic surgeon, complaining of persistent and severe pain in her right leg and hip. The surgeon thought that the pain on her right side could have been caused by "compensating from the left hip for so long." The surgeon recommended that Prince undergo right hip replacement surgery. The issue of the compensability of the injury to her right hip was added by interlineation to Prince's petition.

Trial was held on Prince's petition on December 5, 2022. Because the only relevant issue presented in this appeal is whether Prince timely notified Walmart of her work related accident and associated injury, we focus our recitation of the evidence presented at trial on that issue.

Prince testified that at the time of her January 2021 accident in the bakery, Rose Vargas was her direct supervisor at Walmart. Prince indicated that she believed that she told Vargas about the accident "within a few days" of it occurring, but she was unable to recall exactly when such conversation occurred: "I don't know when I told her." Prince conceded that she had not even thought about telling Vargas immediately after the accident. Prince also conceded that she did not have a specific recollection about the substance of her conversation with Vargas when she did report the accident. She testified, "[Vargas] probably saw me limping and I just told her what had happened."

Prince ultimately testified that she knows she did not report her January 2021 accident to any manager or supervisor at Walmart within the first week after it occurred. She did testify that she told a floor manager other than Vargas "probably before" the filing of the incident report on March 29. However, this testimony differed from her deposition testimony from June 2022, where she specifically indicated that prior to the March 29 incident report, she had not told any supervisor besides Vargas about the accident. Prince was reprimanded by her supervisors at Walmart for not timely informing them of the accident.

During her trial testimony, Prince attempted to explain why she had not reported her injury earlier. She testified that previously, in late 2019 or early 2020, she had injured her eye while cleaning an oven in the bakery. According to Prince, she immediately reported this injury to Joelle, the operations manager, but he did not have her fill out any paperwork or go to the doctor. Prince testified that she did not immediately report the January 2021 accident, because she assumed it would be treated in the same manner as her prior accident.

Vargas, Prince's direct supervisor at Walmart in January 2021, also testified at trial. Vargas explained that she did not witness Prince's accident in the bakery. However, sometime after the accident, Vargas asked Prince why she had been limping. Prince then told her about almost falling in the bakery. Vargas could not recall exactly when she had this conversation with Prince, but believed it was possibly about a week prior to her learning that Prince was moving to a new position in Walmart outside of the bakery. Vargas also explained that she had observed Prince to be limping for some time after January 20, 2021, but initially did not think much of it, since Prince had always moved slowly. Vargas did not ask Prince about her limp until it had become much worse.

Joelle, the manager that ultimately insisted Prince report her injury, also testified. Joelle explained that he happened to observe Prince limping one day while she was working at Walmart. He asked her what had happened, and she told him about the accident in the bakery in January 2021. This conversation took place immediately prior to Prince making an incident report on March 29, 2021. Joelle testified that he did not recall noticing Prince limping prior to March 29. Joelle also testified that he did not recall ever having been informed that Prince had previously suffered from an eye injury as a result of working in the bakery.

Joelle indicated that employees of Walmart are trained that when they are injured in the course of their employment with Walmart, they have a responsibility to report it to a member of the management staff so that an incident intake can be completed immediately.

Following the trial, the compensation court found that Prince had "incurred an injury on January 20, 2021 which resulted in continuous pain and limping since that date." However, the court also found that Prince did not advise Walmart of her accident or injury until March 29, when her manager specifically asked her why she was limping. The court found, "under the particular facts and circumstances of this case, [Prince] failed to give notice 'as soon as practicable'" as is required by § 48-133. The court noted, "One wonders if [Prince] would have ever told the employer, if not for the fact that the employer inquired." The compensation court dismissed Prince's petition as a result of her failure to provide Walmart with proper notice of her injury.

Prince appeals from the court's dismissal of her petition.

## ASSIGNMENT OF ERROR

Restated and consolidated, Prince contends that the compensation court erred in finding that she failed to give Walmart notice of her injury as soon as was practicable.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Greenwood v. J.J. Hooligan's*, 297 Neb. 435, 899 N.W.2d 905 (2017).

Where the underlying facts are undisputed, or if disputed, the factual finding of the trial court was not clearly erroneous, the question of whether § 48-133 bars the claim is a question of law upon which the appellate court must make a determination independent of that of the trial court. *Unger v. Olsen's Ag. Lab.*, 19 Neb. App. 459, 809 N.W.2d 813 (2012).

## ANALYSIS

Section 48-133 provides, in relevant part:

No proceedings for compensation for an injury under the Nebraska Workers' Compensation Act shall be maintained unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof . . . . Want of such written notice shall not be a bar to proceedings under the Nebraska Workers' Compensation Act, if it be shown that the employer had notice or knowledge of the injury.

As such, the compensation court properly dismissed Prince's claim for benefits if it correctly found that Prince did not report her injury suffered in January 2021 to Walmart "as soon as practicable." This court has previously defined "practicable" to mean "capable of being done, effected, or put into practice with the available means, i.e., feasible." *Williamson v. Werner Enters.*, 12 Neb. App. 642, 652, 682 N.W.2d 723, 731 (2004).

In *Williamson v. Werner Enters., supra*, we explained the requirement that an employee notify their employer of an injury as soon as practicable:

> The requirement that notice be given "as soon as practicable" has been a part of the workers' compensation statutes since their inception in 1913. See Neb. Rev. Stat. § 3674 (1913). In discussing the requirements of § 3674, the Nebraska Supreme Court stated in *Good v. City of Omaha*, 102 Neb. 654, 655-56, 168 N.W. 639 (1918): "[T]he requirement of the statute is only what a person acting in good faith would be likely to do without a statute. One receiving an injury, for which he expects to hold another liable, would feel called upon, as soon as practicable after receiving the injury, to give the other notice of it, and would feel called upon, as soon as he knew the nature and extent of his injury, to make his demand for compensation. In courts of justice, the good faith of a claim is always more or less discredited by the fact that no immediate demand was made or that prosecution was long delayed. The employer is entitled to an early demand, so that he may know the nature and amount of the claim; may settle it, if possible, or, if not, may investigate the facts and preserve his evidence."

*Id.* at 646, 682 N.W.2d at 727.

The Supreme Court has also examined the requirement that notice of an injury be reported to an employer "as soon as practicable." In *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995), the court explained that the purposes of the notice requirement are to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury and to facilitate the earliest possible investigation of the facts surrounding the injury. As such, pursuant to the Supreme Court's decision in *Scott*, the crucial questions presented in this appeal are when Walmart had knowledge sufficient to lead a reasonable person to conclude that Prince's leg and hip injury was potentially compensable and that an investigation into the injury was necessary and if such knowledge was acquired "as soon as practicable" after Prince's accident.

Here, the evidence regarding when Walmart had sufficient knowledge to put it on notice of Prince's work-related injury is, as the compensation court found, "less than clear." In her trial testimony, Prince could not even recall the exact date of her accident in the bakery, let alone the date that she first reported this incident to any of her supervisors. She believed that the accident occurred sometime around January 20, 2021, and that she informed her direct supervisor, Vargas, "within a few days." However, Prince could not specify exactly when her conversation with Vargas occurred. She also could not recall the details of their conversation. In addition, Prince testified that she definitely did not report her accident and injury to any manager or supervisor within the first week of the occurrence. Prince could only explain, "[Vargas] probably saw me limping, and I just told her what had happened." During her trial testimony, Prince also referenced telling another supervisor, "Manya," about her injury in the weeks following her accident, however, she could not recall exactly when such conversation occurred, only recalling that it was

- 5 -

"probably before" making her formal report to Walmart in March. This testimony contradicted her prior deposition testimony that she could not recall telling any supervisor besides Vargas about the accident prior to making her formal report.

During Vargas' trial testimony, she confirmed Prince's account that she had, at some point, asked Prince why she was limping. However, while Vargas also did not recall the date of this conversation with Prince, her testimony indicated that it must have occurred more than just a few days after Prince's injury. Vargas testified that she had observed Prince to be limping for some time prior to asking her what was wrong. Vargas explained that Prince had always walked slowly, so initially, Vargas did not think Prince was injured when she began to limp. Vargas did not ask Prince about the limping until Prince's condition appeared to be much worse. Vargas opined that her conversation with Prince may have occurred around the time that she learned that Prince was moving to a new position outside of the bakery. Evidence presented at trial revealed that Prince began working as a door greeter, rather than in the bakery, on March 31, 2021.

The evidence presented at trial revealed that Prince made a formal report regarding her injury with Walmart on March 29, 2021, after Joelle observed her limping and asked her what had happened. Prince indicated during her trial testimony that she had not made a report earlier because she did not believe anything would be done about her injury. Prince testified that, ultimately, she got reprimanded by her supervisors at Walmart for failing to timely inform them of her accident and injury, pursuant to Walmart's employee policy.

In its order, the compensation court found that Walmart was not advised of Prince's accident and injury until Prince made her formal report on March 29, 2021, more than 2 months after the accident occurred. Upon our review of the record, we do not find the court's factual finding regarding the date that Walmart learned of Prince's accident and injury to be clearly erroneous. Prince was unable to provide any clear evidence to demonstrate when or if she had notified a supervisor at Walmart of her injury prior to filing her report on March 29. In fact, other evidence presented at the trial suggested that Prince did not report her accident or injury to any supervisor until Joelle directly confronted her about her limping on March 29. Additionally, as Vargas testified, Prince's physical condition after January 20 did not put Walmart on notice of Prince's accident or injury, given that there was, apparently, no drastic change in Prince's ability to walk. Prince, herself, testified that up until at least March 29, she continued to work her regular hours and performed her regular duties, despite being in a great amount of pain and feeling that her condition was not improving.

The compensation court also found that since Walmart was not provided with any notice of Prince's accident and injury until March 29, 2021, "under the particular facts and circumstances of this case, [she] failed to give notice 'as soon as practicable.'" Upon our review, we agree with the determination of the compensation court.

In *Williamson v. Werner Enters.*, 12 Neb. App. 642, 682 N.W.2d 723 (2004), this court found that an employee's delay of 5 months in reporting an injury sustained at work did not constitute notice as soon as practicable because the employee failed to present evidence that it was not feasible for him to have reported the injury sooner. Similarly, in *Bauer v. Genesis Healthcare Group*, 27 Neb. App. 904, 937 N.W.2d 492 (2019), we found that an employee's delay of 5 weeks in reporting an injury sustained at work did not constitute notice as soon as practicable because, as

a result of the lack of notice, the employee suffered further injury and impaired his employer's ability to investigate the circumstances surrounding his work related accident.

Based upon the evidence presented at trial, there was sufficient evidence to demonstrate that Walmart was potentially compromised by Prince's decision not to report her injury for more than 2 months after her work-related accident. First, had Prince immediately reported her injury and sought treatment, a medical professional could have examined the nature and extent of the injury and caused Prince to have surgery on her left hip sooner. Such earlier treatment of her left hip may have prevented the subsequent injury to Prince's right hip, which the doctor opined was caused by "compensating from the left hip for so long." Prince testified at trial that she had not seen a doctor prior to making her March 29, 2021, report of injury to Walmart. She saw Walmart's doctors almost immediately after making her report.

Moreover, after Walmart was made aware of Prince's accident and injury on March 29, 2021, it temporarily reassigned Prince to be a door greeter so that she could sit for a majority of her work day. Had Walmart learned of Prince's accident and injury earlier, it may have been able to mitigate Prince's injuries by restricting her movements at work.

Finally, because Walmart did not learn of Prince's accident and injury until 2 months after the occurrence, it was not in a good position to investigate the nature and extent of Prince's accident in the bakery or to defend against Prince's claim for workers' compensation benefits. Of particular concern in these circumstances is Prince's failure to explain the length of time between her accident and her report to Walmart. Other than to explain that she did not think that Walmart would do anything about her injury, she does not indicate why she could not have reported her accident and injury earlier.

Based upon the evidence presented at trial, we conclude that it was practicable for Prince to report her injury within a reasonable period of time following her January 2021 injury and that she failed to do so. Consequently, the compensation court correctly determined that Prince failed to give notice to Walmart "as soon as practicable."

CONCLUSION

Having determined as a matter of law that the compensation court correctly found that Prince failed to give her employer, Walmart, notice "as soon as practicable" as required by § 48-133, we affirm the compensation court's dismissal of Prince's petition.

AFFIRMED.